# Supreme Court of the Navajo Nation

**Hsaio Li (Mimi) Lee and Yu Te (James)
Lin, wife and husband, and Toyo-Cinema
Co., Ltd., A Japanese Corporation,
Appellants,**
v.
**Stanley Tallman and Peabody Coal
Company, a Delaware Corporation,
Appellees.**
**Decided November 27, 1996**

## OPINION

Before YAZZIE, Chief Justice, AUSTIN and *SLOAN, Associate Justices (*sitting by designation).

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Frederick Aspey, Esq., Flagstaff, Arizona, for Appellee Tallman, and Richard Woods, Esq., Phoenix, Arizona, for Appellee Peabody.

Opinion delivered by YAZZIE, Chief Justice.

Toyo-Cinema Co. ("Appellant") claims that the district court erred in dismissing its case against Stanley Tallman and Peabody Coal Company ("Appellees"). The Appellant raises two issues on appeal: 1) May a district court extend the time for a plaintiff to complete service of process beyond the six months provided for in Nav. R. Civ. P. 6(f); and 2) Assuming that a judge has extended the time for completion of service of process beyond the six months provided for in Nav. R. Civ. P. 6(f), may another judge dismiss an action in which service is completed more than six months after filing of the complaint, but within the extended time for completion of service granted by the first judge.

I

On November 11, 1990, a motor vehicle collision occurred between Appellant Toyo-Cinema's employees (Lee and Lin) and a vehicle operated by Appellee Stanley Tallman, then an employee of Appellee Peabody Coal Company. Tallman was driving a company vehicle. The incident occurred near Kayenta, within the territorial jurisdiction of the Navajo Nation. Tallman is an enrolled member of the Navajo Nation. Peabody is a foreign corporation which does busi-

ness within the territorial jurisdiction of the Navajo Nation.

The Appellant and Lee and Lin filed personal injury suits against the Appellees in both the Navajo Nation and Arizona state court systems. The Navajo Nation complaint was filed on October 15, 1992 in the Tuba City District Court. The Arizona state complaint was filed on November 9, 1991 (and amended on September 17, 1992) in the Maricopa County Superior Court.

During September and October of 1992, service of process was made on the Appellees for the Arizona state case. Service was not, however, made for the Navajo Nation case. Instead, the Appellant filed a motion to extend the period of time within which service could be made. A six month extension was granted (first extension) by Judge Evelyne E. Bradley on March 8, 1993. The extension enlarged the time for service to October 15, 1993. In August, 1993, the Appellant again filed for an extension and, on August 30, 1993, was granted another six month enlargement of time (second extension) by Judge Wayne Cadman Sr. This extension enlarged the time for service to April 15, 1994.

Meanwhile, in the Arizona state case, Appellee Tallman was dismissed by order, on December 23, 1993, due to the state court's lack of subject matter jurisdiction. On June 22, 1994, the state court granted Appellee Peabody summary judgment due to the Appellant's failure to state a claim upon which relief could be granted.

In the Navajo Nation case, the Appellant filed for a third extension of time within which to serve process. A two year extension was granted (third extension) on April 18, 1994 by Judge Cadman. This extension enlarged the time for service to April 15, 1996. Service on the Appellees was finally accomplished on April 7, 1994, within the time period allowed by the second extension.

On June 23, 1994, Judge Cadman recused himself from hearing the case and Judge Manuel Watchman stepped in to hear subsequent proceedings.

On July 21, 1994, Appellee Tallman moved to dismiss the suit for the Appellant's failure to serve process within the time period prescribed by Nav. R. Civ. P. 6(f) ("Rule 6(f)"). Appellee Peabody joined in the motion seven days later. On July 28, 1994, the individual plaintiffs, Lee and Lin, were dismissed for failing to appear for their depositions; this left Toyo-Cinema as the sole plaintiff.

In response to the Appellees' motion to dismiss, Judge Watchman entered an Order, on December 28, 1994, granting the dismissal. In the Order, Judge Watchman wrote that "[n]otwithstanding the previous ruling of the Court, it appears clear that the action should have been dismissed pursuant to Rule 6(f) on April 16, 1993."

## II

Rule 6(f) states that "[a]n action shall be dismissed without prejudice if the summons is not issued and service completed within six months from the date of the filing of the complaint." Judge Watchman's dismissal order states that "[t]he language of the Rule is mandatory." (Order at para. 4). We disagree.

Rule 6(b), Nav. R. Civ. P., states that an extension of the six-month time limit may be given by the court. Rule 6(b) reads in pertinent part:

> *Extension of Time.* When by these Rules or by notice given thereunder or by order of court, an act is required to be done at or within a specified time, the court for *good cause* may (1) with or without motion or notice, order the period enlarged if request is made before the expiration of the period originally prescribed or as extended by a previous order...; but it may not extend the time for any actions under Rules 50(b), 52(b), 59(e), and 60(c), except under the conditions stated in them. (emphasis added).

Reading Rules 6(b) and 6(f) in conjunction with one another, we find that our courts may enlarge the time to serve process. Such a reading preserves flexibility in the rules. Flexibility in the time requirement for service may be necessary and appropriate in cases where the defendant cannot be found or where the defendant is evading service. Also, extensions may be necessary in cases that involve numerous defendants or in class actions where difficulties in certifying the class occasionally arise.

Our decisions allow for continuances in certain circumstances where flexibility is necessary. *Compare Battles v. General Electric Credit Corp.*, 4 Nav. R. 26, 29 (1983) (holding that the district court should have granted a continuance of a trial where defendant's counsel failed to appear) and *Navajo Nation v. Rico*, 4 Nav. R. 175, 176 (W.R. Dist. Ct. 1983) (stating that the grant of continuances of trials is within the sound discretion of the trial court and holding that good cause for a continuance did exist where the prosecution's sole material witness was legitimately unavailable to testify) with *In re Estate of Plummer*, 6 Nav. R. 271, 274 (1990) (holding that good cause for a continuance did not exist where counsel had only one day to prepare for the hearing, although his client had over a month's notice of the hearing). If continuances are allowed for entire trials in certain circumstances, then continuances for lesser components of the litigation process, such as service of process, are also to be allowed. For these reasons, we hold that Rule 6(f) is not mandatory and an extension of the time to serve process may be granted.

## III

The trial court has discretion to grant or deny an extension of time to serve process. That discretion must be exercised in a sound and legal manner and not in an arbitrary or capricious manner. *Battles*, 4 Nav. R. at 27. The boundaries within which the trial court must exercise its discretion are determined by the facts of the case and established by rules and law. *See In re Contempt of Sells*, 5 Nav. R. 37, 38 (1985). In light of the strong language of Rule 6(f), the district court must find substantial justification to extend the time period; otherwise, Rule 6(f) would have little effect or force.

Specifically, the requesting party must show two things in order to receive an extension of time for service of process: due diligence and good cause. First, the

party must prove that he or she has exercised due diligence in attempting to serve process. Once due diligence is proven, the second level of inquiry arises: whether the requesting party has proven *good cause* for an extension pursuant to Rule 6(b).

## A. Due Diligence

More than inadvertence, mistake of counsel, or ignorance of rules is required to receive an extension of time for service of process. Rather, the requesting party must show that he or she exercised due diligence in attempting to serve process. The purpose of the due diligence requirement is to ensure that the plaintiff acts in good faith in seeking a continuance. Further, it is to prevent the plaintiff from sitting on claims and retaining sole control of them, with resulting prejudice to the defendant.

The determination of the requisite diligence rests with the sound discretion of the district court and should be made on a case-by-case basis. *Bradley v. Benally*, 6 Nav. R. 156, 158 (1989). It should be noted, however, that "[t]he diligence requirement imposes an affirmative obligation on the moving party to keep abreast ... of the case." *Id.* Where a requesting party has the opportunity or ability to serve process, for instance, the rule requires that he or she do so. *See Plummer*, 6 Nav. R. at 274 (stating that a litigant should not be able to claim the need for a trial continuance where he or she had ample time to prepare or where the party had the ability to act).

Our neighboring jurisdiction of Arizona also imposes a legal duty on the plaintiff to use due diligence in serving process upon the defendant. *See, e.g., Grobe v. McBryde*, 468 P.2d 936, 938, 939 (1970) (citing *Murphy v. Valenzuela*, 386 P.2d 78, 80 (Ariz. 1963)); *Air Power v. Superior Court*, 690 P.2d 793, 795 (Ariz. Ct. App. 1984); *Riley v. Superior Court*, 567 P.2d 1218, 1220 (Ariz. Ct. App. 1977). In *Riley*, for instance, the court found that the plaintiff failed to demonstrate due diligence because it made no attempt to ascertain the defendant's home address even though several means to do so were available to the plaintiff. 567 P.2d at 1220. The court stated that a plaintiff cannot "sit back and say 'it would not have worked' as an excuse ... and then be heard to say he exercised diligence." *Id.* Instead, the plaintiff must meet the affirmative obligation of attempting to serve process.

In the present case, the Appellant did not meet the affirmative obligation of attempting to serve process. The Appellant made no attempt to serve the Appellees for the Navajo Nation court case during the time permitted by Rule 6(f). The Appellant's lack of due diligence is highlighted by the fact that it had the opportunity and ability to serve process. Instead, the Appellant purposefully delayed service of process for the Navajo Nation court case until the simultaneous state court case was completed. If the due diligence rule were applied to this case, we would hold that the Appellant did not make the requisite showing of due diligence for an extension of time to serve process. The due diligence rule will apply hereafter.

## B. Good Cause

Good cause is not a standardized formula, but is instead a case-specific, fact-based inquiry that is to be conducted within the sound discretion of the trial court. *See Battles*, 4 Nav. R. at 27-29 (holding that the district court should have granted a continuance of a trial where defendant's counsel failed to appear); *Rico*, 4 Nav. R. at 176 (stating that the grant of continuances of trials is within the sound discretion of the trial court and holding that good cause for a continuance did exist where the prosecution's sole material witness was legitimately unavailable to testify). In determining whether good cause exists, our courts should consider policies favoring the speedy disposition of cases and the importance of serving timely notice so as to prevent prejudice to the defendant. *See In re Certified Questions II*, 6 Nav. R. 129, 131 (1989) (stating that unauthorized deviations in the Rules may prejudice parties and impede judicial efficiency); *In re Estate of Goldtooth Begay #2*, 7 Nav. R. 29, 31 (1992) (emphasizing the importance of notice in Navajo common law by stating "that Navajo due process ensures notice"); *Peterson v. Ford Motor Credit Co.*, 2 Nav. R. 36, 41 (C. P. Dist. Ct. 1979) ([t]he primary purpose of having rules for service is to ensure the parties are notified and have an opportunity to defend).

Failure to serve notice in a timely manner allows the plaintiff to retain sole control of the case and causes great prejudice to the defendant. The Court has addressed the importance of preventing prejudice in the context of granting trial continuances. In *Plummer*, for instance, the Court stated that a party requesting a continuance must show that prejudice or harm will result if no continuance is granted. 6 Nav. R. at 275. In *Battles*, we stated that a showing of prejudice is an element common to all of the factors that a court may consider in deciding to grant a continuance. 4 Nav. R. at 28, 29 (holding that requiring the defendant to represent himself on short notice would sufficiently prejudice him). Finally, in *Rico*, the Court stated that "a showing of prejudice ... is most important." 4 Nav. R. at 176. In light of the importance of preventing prejudice to the defendant, we find that good cause for an extension of time to serve process includes, but is not limited to, a showing by the plaintiff that defendant will not be prejudiced by such an extension.

In this case, the Appellant argues that a pending, simultaneous state court action was sufficient justification for an extension.[1] We disagree. Simultaneous court actions pending in the Navajo Nation and another jurisdictiondo not constitute good cause for an extension of time to serve process. To find otherwise would be to invite forum shopping between state and Navajo Nation courts.

Forum shopping is particularly damaging in cases such as this one, where a non-Indian litigant attempts to bring, in a state court, an action that is clearly within Navajo jurisdiction. Such action negatively impacts the Navajo govern-

---

1. Appellant also incorrectly assumed that the service of process for the state court case provided sufficient notice to the Appellees for the Navajo Nation court case. However, serving notice for a separate, pending suit does not permit the plaintiff to fail to serve notice for the suit in question.

ment's ability to make its own laws and be governed by them. *Williams v. Lee*, 358 U.S. 217, 220 (1959). In light of Appellee Tallman's membership in the Navajo Nation, Appellee Peabody's extensive contacts with the Navajo Nation, the location of the accident within Navajo Nation territorial jurisdiction, and the presence of a company vehicle in the accident, Navajo adjudicatory jurisdiction in this case is clear. 7 N.N.C. § 253.B. (1995) (giving Navajo Nation courts civil jurisdiction over "[a]ll civil actions in which the defendant is a resident of Navajo Indian Country, or has caused an action to occur within the territorial jurisdiction of the Navajo Nation); *Taylor v. Bradley*, 6 Nav. R. 147, 149 (1989) (holding that Navajo Nation courts have civil jurisdiction over all persons who cause an action to occur in Navajo Indian Country); *see also Williams v. Lee*, 358 U.S. 217, 223 (1959) (holding that the state may not exercise jurisdiction if doing so would interfere with Indians' right "to make their own laws and be ruled by them"); *Montana v. United States*, 450 U.S. 544, 565 (1981) (a tribe may regulate the activities of non-members who enter consensual relationships with the tribe or its members); *Enriquez v. Super. Ct. In and For County of Pima*, 565 P.2d 522, 523 (Ariz. Ct. App. 1977) (stating that the state court's assumption of jurisdiction over a case involving a non-Indian suing an Indian for an accident occurring on a reservation would be an infringement on tribal self government). As such, this case should have proceeded in Navajo Nation courts. By pursuing the state court case, the Appellant made a misplaced attempt at forum shopping.

In cases where litigants feel compelled to pursue their claims in state court and Navajo Nation court, they have valid options on how to proceed. They may serve process for both cases and then ask one of the courts for a trial continuance. Alternatively, they may ask the court for an extension of time to serve process or for a trial continuance. Failing to serve process for the Navajo Nation court case, in the absence of good cause, however, is an error.

## IV

The final issue deals with "horizontal appeals" or the power of one trial judge to "overrule" another trial judge and such is discussed here for guidance. In this case, Judge Watchman's dismissal order effectively overruled the previous time enlargements granted by Judges Bradley and Cadman. Horizontal appeals are strongly discouraged. Navajo common law disfavors second-guessing a decision maker. The decision of a *naat'aanii*, when made in good faith, is to be respected and followed. Similarly, the word of a medicine man, in propounding the way of things, is to be respected and followed. Our decisions support this principle. In *Rico*, the trial judge who granted a motion after it had been denied by another trial judge wrote that he was "extremely reluctant to enter an order different than that entered by the [previous judge]. Normally, judges should respect the prior rulings of a judge...." 4 Nav. R. at 177. Accordingly, we establish a presumption in favor of the rulings of the first judge.

The issue is closely related to the "law of the case" doctrine. According to that doctrine, "a determination of law once made will be treated as correct throughout all subsequent stages of the proceeding except when the issue is raised in a higher court." *Barron's Law Dictionary* 269. Accordingly, one trial judge cannot overrule another trial judge of equal authority. This rule helps to preserve precious judicial resources and it discourages "judge shopping," wherein litigants endlessly search for a judge until they find one that will provide them with a favorable ruling.

Sound judicial policy also limits our trial judges from overruling one another. Before a judge overrules another, that judge must make findings sufficient to overcome the presumption favoring the first judge. As such, overrulings will only be allowed in cases where there is a substantial change of circumstances, where a clear error in the first decision makes the decision manifestly erroneous, or where manifest injustice will result if the first ruling is not overturned. Substantial change of circumstances may include the availability of new evidence or previously unavailable evidence that will more likely than not change the outcome of the decision. Also, a litigant may be entitled to a new ruling where a change of law occurs, such as where this Court construes a statute anew. These circumstances seek to prevent unduly harsh and manifestly unjust decisions.

When one judge overrules another and the issue is presented to this Court, we will examine the merits of the original judge's ruling to determine whether the second judge abused his or her discretion in overruling the original judge.

## V

Despite our conclusion that there was not good cause to enlarge the time within which to serve process, the Appellants actually obtained an extension of time from two prior presiding judges and, in reliance on those orders, faithfully completed service of process. In other words, the Appellants relied upon the validity of the prior orders and, finally, proceeded to serve process. This Court will honor the expectations created by those orders.

Accordingly, and without prejudice to our analysis, the decision of the Tuba City District Court dismissing the complaint is REVERSED. The case is remanded to the Tuba City District Court for further proceedings.